# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 24, 2014 Session

## STATE OF TENNESSEE v. ALLEN LEBRON TUCKER

**Appeal from the Criminal Court for Hamilton County**
No. 280286      Barry A. Steelman, Judge

---

**No. E2013-02727-CCA-R3-CD** - **Filed September 9, 2014**

---

A Hamilton County jury found the Defendant, Allen Lebron Tucker, guilty of possession with intent to sell one-half gram or more of cocaine. The trial court ordered the Defendant to serve a fifteen-year sentence for this conviction. On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress the evidence obtained during the execution of a search warrant and when it excluded evidence of his girlfriend's prior drug conviction. After a thorough review of the record and relevant law, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Jay Underwood, Chattanooga, Tennessee, for the appellant, Allen Lebron Tucker.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bret Alexander, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

This case arises from the execution of a search warrant on the Defendant's residence. A Hamilton County grand jury returned a two-count indictment charging the Defendant with possession of cocaine with the intent to sell and possession of drug paraphernalia. The

Defendant filed a motion to suppress the evidence obtained during the execution of a search warrant on his residence. He alleged that law enforcement violated the knock-and-announce rule by entering the residence too quickly and that the warrant was facially invalid.

## A. Motion to Suppress

The trial court held a hearing on the motion to suppress and the parties presented the following evidence: Jeff Lancaster, a Chattanooga Police Department narcotics detective, testified that he executed a search warrant at the Defendant's residence on March 16, 2011, along with eight to ten officers. Detective Lancaster testified that he and the other officers wore black tactical vests that were marked with "police" in large white letters across the front and the back of the vests. He explained that the residence had been under surveillance for approximately a week.

Detective Lancaster testified that the officers began announcing, "police, search warrant," as soon as they exited the raid van. He said one person was in the yard at the time, and the officers continued to announce their presence as they proceeded up the steps to the front door of the residence. Upon reaching the front door, Detective Lancaster "knocked and announce[d]." The front interior door of the residence was open, and Detective Lancaster could see into the residence through the outer closed screen door. Detective Lancaster did not see anyone inside the residence, and, after waiting four or five seconds, he entered.

Detective Lancaster testified that he found the Defendant and Donnella Colvin, the Defendant's girlfriend, inside the "living room area" of the residence. He recalled that the Defendant and Ms. Colvin were both seated on a couch, neither making any attempt to respond to the knock at the front door. Detective Lancaster stated that the police found drugs in the kitchen cabinet. He also stated that he found a water bill for the residence in the Defendant's name.

On cross-examination, Detective Lancaster testified that he had participated in the surveillance of the Defendant's residence prior to the execution of the search warrant. He explained that he observed "short-term traffic" consistent with illegal drug sales. A confidential informant informed police that "a black male, light-skinned, known as Allen, was selling crack cocaine from the said location." Three controlled buys were conducted with the confidential informant at the Defendant's residence. Detective Lancaster said that he provided the confidential informant with marked money to buy the drugs and that the marked money was found on the Defendant's person during the execution of the search warrant.

Detective Lancaster testified that it took the police officers approximately ten seconds

to get from the van to the Defendant's front porch. He reiterated that he knocked on the front door of the residence and announced "police, search warrant," and then waited four or five seconds. When he received no response, he entered the residence. He said that he did not cause any damage to the door upon entry. The Defendant, who was seated on a couch, did not show any reaction upon the police officers' entry. Detective Lancaster testified that he executed the search warrant on the same day he received the search warrant signed by a magistrate.

Lee Wolff, a Chattanooga Police Department narcotics detective, testified that he was involved with the execution of a search warrant at the Defendant's residence. Detective Wolff described the arrival at the residence as follows:

> As we were pulling up in front of the residence, there was a guy on the front porch of the residence, appeared to have been a customer or someone standing on the front porch.
>
> When we pulled up, he made eye contact with us and he immediately starting informing everyone around the vicinity that we were police, or they call it a bum rush.
>
> . . . .
>
> When we were exiting the van, [the "guy on the front porch"] jumped off the front porch and started to flee.

Officer Wolff stated that as the man jumped, six or seven feet down, off the front porch of the Defendant's residence yelling "bum rush, bum rush," the front screen door was shutting "as if someone was at the door." Officer Wolff estimated that it took the officers approximately twenty to thirty seconds to get from the van to the front door of the residence. He stated that all of the officers were yelling "search warrant, police" as they approached.

On cross-examination, Detective Wolff testified that crack cocaine, marijuana, drug paraphernalia, and cash were found during the search of the residence. He secured these items at the scene and submitted the evidence to the property room at the police department, March 16, 2011, on the same day as the search.

After the presentation of the evidence, the trial court denied the Defendant's motion to suppress, finding that the warrant was facially valid and that, under the circumstances of this case, the Defendant was given adequate notice of the officers presence and purpose.

## B. 404(b) Hearing

The State filed an intent to introduce evidence of the Defendant's prior convictions for impeachment purposes. The State sought to introduce evidence of a 2003 theft conviction, two 1993 felony convictions, a 1994 felony conviction, and a 2007 possession of cocaine with intent to sell conviction. After hearing arguments from both parties, the trial court determined that none of the convictions were admissible because the prejudicial effect outweighed the probative value. As to the 2007 felonious possession of cocaine conviction, the trial court found that it improperly showed propensity.

## C. Trial

On the day of trial, in the absence of the jury, the Defendant's attorney announced his intent to introduce evidence of Ms. Colvin's prior conviction for possession with intent to sell marijuana. Both parties stated that they did not intend to call Ms. Colvin as a witness during the trial. The trial court denied the Defendant's request, finding that the probative value of the three-year-old marijuana conviction was substantially outweighed by the prejudicial effect. The State also made an oral motion to dismiss count 2 of the indictment, possession of drug paraphernalia, which the trial court granted.

During the trial, the parties presented the following evidence: Detective Lancaster testified consistently with his testimony at the suppression hearing about the execution of the search warrant at the Defendant's residence. In addition, he identified a photograph of two men in the Defendant's yard at the time of his arrival to execute the warrant. Detective Lancaster explained that one of the officers went toward the men in the yard while two other officers went to the perimeter of the property "for safety." The remaining officers went to the front door with Detective Lancaster in the lead.

Detective Lancaster testified that, upon entry to the house, he advised the Defendant that he was there looking for crack cocaine and that he advised the Defendant of his *Miranda* rights. The Defendant agreed to cooperate with the police and showed Detective Lancaster where the crack cocaine was in the kitchen. Detective Lancaster retrieved the crack cocaine, approximately "15 rocks" on a black plate, from the top shelf of a kitchen cabinet. The Defendant advised Defendant Lancaster that he sold crack cocaine to support his family. Detective Lancaster stated that the police did not find any items in the Defendant's residence that were consistent with the personal use of crack cocaine.

Detective Lancaster testified that, after the Defendant's arrest and transport to the police precinct, he again advised the Defendant of his *Miranda* rights, and the Defendant signed a waiver of rights form. The Defendant told Detective Lancaster that he was not

4

employed. In response to police questioning, he named his sources for the crack cocaine and stated that he had obtained the narcotics weekly for approximately two months. He confirmed that he had obtained the narcotics to sell and bought approximately four grams at a time.

On cross-examination, Detective Lancaster confirmed that the crack cocaine recovered from the Defendant's residence weighed 6.6 grams. He agreed that no guns were found in the residence.

Detective Wolff testified consistently with his testimony from the suppression hearing. In addition, he testified that his role at the scene was to serve as the evidence officer. He explained that the evidence officer collects and tags all evidence recovered at a crime scene and transports the items to the property room where the evidence is logged and stored. Detective Wolff identified the Chattanooga Police Department property form associated with this case. He noted that Officer Hedrick signed out the crack cocaine and marijuana related to this case on May 10, 2011, and transported the evidence to the Tennessee Bureau of Investigation ("TBI") lab for processing. Officer Hedrick's signature on the property form indicated he returned the evidence to the property room on June 29, 2011. Detective Wolff identified a receipt documenting that $154.00 was taken from the Defendant's residence as evidence.

Donna Jacobsen, a TBI forensic scientist, testified as an expert witness in the field of forensic chemistry. Agent Jacobsen stated that the rock-like substance submitted in this case was cocaine base and weighed 4.7 grams.

The State recalled Detective Wolff, who testified about the execution of the search warrant. He stated that, when the police arrived, there was a man standing in the yard and a man standing on the front porch speaking with "somebody" in the door. As he exited the van, the man on the porch began "warning the person that was in the house, hollering 'bum rush, bum rush.'" Detective Wolff explained that "bum rush" was a street slang "term that they use for us . . ., when we're hitting or executing a narcotics search warrant" to warn others of a police presence in the area.

Detective Wolff testified about his experience in executing search warrants on residences based upon drug complaints. He said that, in terms of the evidence recovered, there are significant differences between a residence with drug users versus a residence of a drug seller. In a "crack house" where there are drug users, there are items associated with use, such as pipes, Brillo pads to filter the crack, and Coke cans used as smoking devices. In a residence associated with the sale of drugs, larger amounts of drugs are generally present as are materials used to package drugs, such as sandwich baggies, scissors, and digital scales.

He added that large amounts of cash are often found in residences associated with the sale of drugs. Detective Wolff stated that devices used to smoke crack cocaine were not recovered from the Defendant's residence.

Phillip Narramore, a Chattanooga Police Department detective, testified as an expert in the field of sale values and quantities of illegal drugs. Detective Narramore testified that one rock of crack cocaine is "usually" sold for $20. Detective Narramore estimated that, for the amount of crack cocaine recovered in this case, a dealer would likely receive between $600 and $800. He explained that the seller's profit margin varies depending on how frequently they purchase from their source. A source would more likely "cut [ ] a better deal" if a drug dealer bought frequently. Detective Narramore estimated that the amount recovered in this case was purchased from a source for $200 to $250.

Detective Narramore testified that, during the execution of the search warrant at the Defendant's house, he and his partner were assigned to the perimeter. He said that people often attempt to flee during the execution of narcotic search warrants, so, generally, officers are assigned to the outside area of the residence to prevent escape. After the Defendant's arrest and transport to the police department, Detective Narramore spoke with the Defendant. Detective Narramore confirmed that he reviewed the Defendant's *Miranda* rights with him before discussing the case. Detective Narramore identified the waiver form signed by the Defendant. During the interview, the Defendant identified two parties from whom he had been purchasing the crack cocaine. In total, the Defendant stated that he had purchased approximately eighty grams of crack cocaine over a twelve-week period. The Defendant told the police that he had paid approximately $200 for every four ounces and sold the crack cocaine "by the rocks."

Based upon this evidence, the jury convicted the Defendant of possession with intent to sell one-half gram or more of cocaine. At a subsequent sentencing hearing, the trial court sentenced the Defendant to serve fifteen years in the Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant appeals, asserting that the trial court erred when it denied his motion to suppress the evidence found during the search of his residence and when it denied his request to present evidence of Ms. Colvin's prior drug conviction.

### A. Motion to Suppress

The Defendant attacks the trial court's denial of his motion to suppress on two bases:

(1) the police officers executed the search warrant in a manner that violated the "knock and announce" rule found in Rule 51(e)(2) of the Tennessee Rules of Criminal Procedure; and (2) the warrant was facially invalid for failure to use the word "promptly" in its charge to the police officers executing the warrant. The State responds that facts presented at the suppression hearing indicate that the Defendant had adequate notice of the warrant and sufficient time to admit officers into his residence. The State also asserts that the warrant was facially valid despite the absence of the word "promptly" in the warrant.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

### 1. "Knock and Announce" Rule

The Defendant contends the evidence seized during the search of his residence should have been excluded because police violated the "knock and announce" procedures of Tennessee Rule of Criminal Procedure 41(e)(2). The State responds that the officers provided adequate notice of their presence and purpose in accordance with Rule 41.

Rule 41(e)(2) of the Tennessee Rules of Criminal Procedure prescribes how an officer is to execute a search warrant:

> If, after notice of his or her authority and purpose, a law enforcement officer is not granted admittance . . . the peace officer with a search warrant may break open any door or window of a building or vehicle, or any part thereof, described to be searched in the warrant to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the

property.

In sum, an officer who is to execute a search warrant "must give: (1) notice of his authority; and (2) the purpose of his presence at the structure to be searched." *State v. Perry*, 178 S.W.3d 739, 745 (Tenn. Crim. App. 2005) (citing *State v. Lee*, 836 S.W.2d 126, 128 (Tenn. Crim. App. 1991) and *State v. Fletcher*, 789 S.W.2d 565, 566 (Tenn. Crim. App. 1990)). These requirements may be met by a "knock and announce" procedure, where the officer knocks on the door and announces that he has a search warrant to search the house. *Wilson v. Arkansas*, 514 U.S. 927, 933-34 (1995).

The "knock and announce" procedures are unnecessary where exigent circumstances exist before or during a search. *Richards v. Wisconsin*, 520 U.S. 385, 394; *State v. Henning,* 975 S.W.2d 290, 299-300 (Tenn. 1998). Compliance is not required if knocking and announcing would increase the officer's peril, or if an officer executing a warrant perceives indications of flight or indications that evidence is being destroyed. *Ker v. California*, 374 U.S. 23, 38 (1963); *State v. Fletcher*, 789 S.W.2d 565 (Tenn. Crim. App. 1990).

After recounting the evidence presented at the suppression hearing, the trial court made the following findings in support of his denial of the Defendant's motion:

> So the Court finds that under all of these circumstances, that is, the announcement that's made from the time that the van pulls up in compliance with rule 41 about the authority and the reason for the presence; the fact that one officer testified that even after they arrived on the porch, that there was a four-second delay between the announcement on the porch and the entry; the fact that when the officers did arrive there was someone on the porch, that the door to the home was open, and that there was a person on the porch who announced [ ] "bum rush," which, according to the police officer, meant police officers were there for the execution of a search warrant. That announcement was made by the person on the porch while the door was open and closing to the residen[ce].

> So the Court finds that there was sufficient compliance with rule 41.

The evidence at the suppression hearing showed that the officers were wearing vests that identified them as police officers and that the police officers yelled out, "Police officers, search warrant" from the time they exited the raid van. Additionally, a man standing on the Defendant's porch speaking with someone inside the residence also announced the police presence by yelling "bum rush" as he fled the Defendant's residence and as the screen door to the Defendant's residence closed. Detective Lancaster knocked on the door and announced

8

his presence and purpose and, after no response, opened the screen door and walked into the residence, causing no property damage. We conclude that the evidence is sufficient to establish that the Defendant had notice of an investigation in progress, as well as notice of the police authority and the purpose of the police presence at the residence. The Defendant is not entitled to relief.

## 2. Search Warrant

The Defendant argues that the search warrant was facially invalid because it did not contain the word "promptly." He argues that because Tennessee Rule of Criminal Procedure 41(c)(2)(B) states that the search warrant "shall command the law enforcement officer to search *promptly* the person or place named," the warrant in this case was invalid. (Emphasis added). The State responds that the requirement that the search warrant be returned within five days is indication that law enforcement must act with promptness. In denying the motion, the trial court found that "where the warrant is issued and it is ordered that it be executed within five days and that there be a return within five days, that that suffices."

Tennessee Rule of Criminal Procedure 41(c) imposes "procedural safeguards [which] are intended 'to secure the citizens against carelessness and abuse in the issuance and execution of search warrants.'" *State v. Coffee*, 54 S.W.3d 231, 233 (Tenn. 2001) (quoting *Talley v. State*, 345 S.W.2d 867, 869 (1961)). Specifically, Rule 41(c) requires that the warrant shall "identify the property or place to be searched, or name or describe the person to be searched; the warrant also shall describe the property or person to be seized." Search warrants shall also "command the law enforcement officer to search promptly the person or place named and to seize the specified property or person." Tenn. R. Crim. P. 41(c)(2)(B). Consistent with this requirement, Rule 41(e)(3) requires that the warrant must be executed within five days of its authorization, and Rule 41(f) requires that the executing officer "promptly" return a written inventory of the items seized.

The search warrant in this case was issued and executed on the same date, March 16, 2011. The search warrant specifically described the address and person to be searched. It then lists items associated with the sale of drugs to be seized and orders the executing officer to return all items seized within five days.

Our review of Rule 41 does not reveal a requirement that the term "promptly" must be used in a search warrant in order for the search warrant to be valid. The purpose of the rule is to protect against warrants becoming stale. *See State v. Evans*, 815 S.W.2d 503, 504-06 (Tenn. 1991). We agree that the requirement that the search warrant be executed within five days and the requirement that the executing officer return the written inventory ensure that officers act promptly in executing a warrant once a magistrate has found probable cause.

9

These requirements included in the search warrant effectively "command" the officer to act "promptly" in compliance with Rule 41(c)(2)(B).

Accordingly, we conclude that the trial court did not err in denying the Defendant's motion to suppress on this basis. The Defendant is not entitled to relief.

## B. Evidence of Ms. Colvin's Prior Drug Conviction

The Defendant asserts that the trial court's denial of his request to present evidence of Ms. Colvin's prior drug-related conviction violated his constitutional right to present a defense. The State responds that the Defendant has failed to show that this evidence was critical to his defense.

In excluding the admission of Ms. Colvin's prior conviction, the trial court stated:

> Here the [D]efendant's charged with possession of cocaine and the defense seeks to show that the, that the party, [Ms. Colvin], was actually the party who was in possession of the cocaine by virtue of a prior marijuana conviction[,] three years old. That probative value is not very great. The probative value is, in the court's opinion, outweighed by the danger of unfair prejudice.
>
> . . . .
>
> [I]n the Court's opinion, the probative value is substantially outweighed by the prejudicial effect in that a basic principle of the law is that a prior conviction is not to be used in order to show propensity, in general, and that is what the defense is seeking to do is to show propensity.
>
> Also, generally, prior convictions are not to be used for anything other than impeachment, and this is not being offered for purposes of impeachment. This is something that the defense seeks to question the detective about as to whether the detective did a thorough investigation, and frankly, I think that could be misleading to the jury.

Exclusions of evidence may violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution, even if the exclusions comply with rules of evidence. *State v. Flood*, 219 S.W.3d 307, 316-17 (Tenn. 2007). Principles of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony. *See Chambers v. Mississippi*, 410 U.S. 284 (1973); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn. 2000).

10

Rules of procedure and evidence are designed to assure fairness and reliability in the criminal trial process. *Id*. So long as the rules of procedure and evidence are not applied arbitrarily or disproportionately to defeat the purposes they are designed to serve, these rules do not violate a defendant's right to present a defense. *Flood*, 219 S.W.3d at 317 (citations omitted). Because "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Scheffer*, 523 U.S. at 308, "[a]n evidentiary ruling ordinarily does not rise to the level of a constitutional violation," *State v. Rice*, 184 S.W.3d 646, 673 (Tenn. 2006).

It has long been recognized by the courts of this state that an accused is entitled to present evidence implicating others in the crime. *State v. Powers*, 101 S.W.3d 383, 394 (Tenn. 2003) (citing *Sawyers v. State*, 83 Tenn. (15 Lea) 694, 695 (1885)). The *Powers* court instructed that the Rules of Evidence are adequate to determine whether such evidence is admissible. *Id*. In Tennessee, the determination of whether proffered evidence is relevant in accordance with Tennessee Rule of Evidence 402 is left to the sound discretion of the trial judge, as is the determination of whether the probative value of evidence is substantially outweighed by the possibility of prejudice pursuant to Tennessee Rule of Evidence 403. *State v. Kennedy*, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999) (citing *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995); *State v. Burlison*, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993)). In making these decisions, the trial court must consider the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial. *State v. Williamson*, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). We will only disturb an evidentiary ruling on appeal when it appears that the trial court arbitrarily exercised its discretion. *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

Initial questions of admissibility of evidence are governed by Tennessee Rules of Evidence 401 and 403. These rules require that the trial court must first determine whether the proffered evidence is relevant. Pursuant to Rule 401, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Forbes*, 918 S.W.2d at 449 (quoting Tenn. R. Evid. 401). In other words, "evidence is relevant if it helps the trier of fact resolve an issue of fact." NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 4.01[4], at 4-8 (4th ed. 2000). After the trial court finds that the proffered evidence is relevant, it then weighs the probative value of that evidence against the risk that the evidence will unfairly prejudice the trial. *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). If the court finds that the probative value is substantially outweighed by its prejudicial effect, the evidence may be excluded. Tenn. R. Evid. 403. "'[E]xcluding relevant evidence under [Tenn. R. Evid. 403] is an extraordinary remedy that should be used sparingly

and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion.'" *James*, 81 S.W.3d at 757-58 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999) (citations omitted)).

A defendant is entitled to present evidence implicating another in the crime only if the evidence is relevant under Tennessee Rule of Evidence 401 and the evidence is not unfairly prejudicial as provided by Rule 403. *Id.* In a criminal case, evidence that a third party had the motive and opportunity to commit the offense certainly would be relevant. *Powers*, at 395. Even if the evidence meets the test of relevance, however, Tennessee Rule of Evidence 403 may still justify exclusion of such evidence. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In the case under submission, we conclude that the trial court did not abuse its discretion when it excluded evidence of Ms. Colvin's prior conviction for possession with intent to sell marijuana. The excluded evidence had little probative value. The Defendant sought to implicate Ms. Colvin in this offense, the sale of cocaine, by introducing evidence of her three-year-old conviction for possession with intent to sell marijuana. The evidence of her prior conviction, however, revealed neither her motive or opportunity to commit the present crime. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003). Moreover, evidence of Ms. Colvin's prior conviction would be misleading, pursuant to Tennessee Rule of Evidence 403, in light of the trial court's exclusion of the Defendant's prior drug-related convictions. Therefore, the trial court did not abuse its discretion when it excluded evidence of Ms. Colvin's prior conviction. Finally, in light of the overwhelming evidence of the Defendant's guilt, if any error occurred in excluding the evidence of Ms. Colvin's prior conviction, such error would clearly have been harmless. T.R.A.P. 36(b). The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE